Good morning.  And may it please the Court, Ben Hogan on behalf of Baker Ranches, and I would like to reserve five minutes for rebuttal if I could. Counsel, please be reminded that the time shown on the clock is your total time remaining. Thank you, Your Honor. To aid the Western states in solving the myriad problems stemming from decades of chaotic and piecemeal litigation over water rights in the West, and to give real meaning to the Congress passed the McCarran Amendment to bring the major stakeholder to the table by waiving the United States' sovereign immunity. Congress did so to provide finality and certainty to all of those involved in the painstaking process of adjudicating and decreeing water rights in the West, from the claimants themselves, the rights holders, to the state administrative agencies and the courts. An unbroken line of cases in this Court and the United States Supreme Court recognizes that intent and purpose. Those cases also, perhaps most importantly for this case, also recognize that the adjudications that happen under those state statutory schemes are indeed comprehensive. And they also, as this Court held in Timowick, the Court held in uncertain terms that the McCarran Amendment waives the United States' sovereign immunity for the administration of rights determined after the McCarran Amendment's passage in 1952, but also before its passage in 1952. Is that unconditional? The McCarran, the Timowick's holding was not narrow. And it said, we hold that, and I quote, the McCarran Amendment waives the United States' immunity from suit, not only for administration of water rights acquired after the statute's enactment, but also for the administration of water rights acquired before the law came into effect. Would that include instances where the United States was not a party to the water adjudication? Yes, it would. And in that case— What case says that the waiver of sovereign immunity would apply where the United States was not joined as a party to the water adjudication? So, a number of cases. Tell me your best case, your strongest case for the proposition that the waiver of sovereign immunity was not a party to the adjudication. So, first, I would point to Timowick. And the court's holding in Timowick was not so narrow to suggest that it was limited by, in that case, the fact that the United States had purchased five appropriated rights that were decreed under the 1935— But it did not address that issue specifically, correct? It did not address that issue specifically, but it did not limit its holding. But I would also point to a number of cases from the Supreme Court and this court, three in specific, four. Eagle County from the United States Supreme Court. And that confirmed that Colorado's adjudicatory scheme, which is much like Nevada's, was a comprehensive adjudication. And adjudications occurring under that were sufficient for purposes of triggering the McCarran Amendment's waiver of sovereign immunity. In parallel, the U.S. v. District of Water Division No. 5, which was also a Colorado case, that's 401 U.S. 527. And then, most importantly, for our purposes here, I would point to the State of Oregon case, which is a 1994 decision from this court that goes through, in painstaking detail, the purpose behind the McCarran Amendment, the statutory schemes that were in place at the time of its passage. And I think footnote 8 is especially instructive in that case. Pages 767 to 768 go through the reasons why those statutory schemes are comprehensive and that those were the exact type of comprehensive schemes that Congress had in mind when it was passing the McCarran Amendment. And footnote 8, I think, wraps this up nicely. It says, and I quote, the United States also implies that Congress intended that the western states would amend their statutory adjudication statutes to fall within the confines of the narrow interpretation advocated by the United States. However... Counsel, what do we do with our holding in United States v. State of Oregon that says to be comprehensive, an adjudication must include the undetermined claims of all parties with an interest in the relevant water source? What do we do with that language? If the United States was not included as a party, how can it be comprehensive? Judge Rawlinson, I think that the easy answer is that all of the post-McCarran Amendment cases, post-1952, obviously say that the United States ought to be a party for an adjudication to be comprehensive because now the courts have jurisdiction over the United States. There's no question. And so if there's an adjudication that occurs post-McCarran Amendment that doesn't include the United States, it would be problematic in the sense that it's not comprehensive in adjudicating all of the potential rights. We're talking about pre-McCarran Amendment. Right. So pre-McCarran Amendment, the courts didn't have jurisdiction over the United States.  Because it had sovereign immunity. It hadn't been waived. And so there was no way... That's the difficulty I'm having with your argument. Because the United States' sovereign immunity couldn't be waived, it couldn't be a party, and its rights were not adjudicated, therefore it was not a comprehensive determination of all the rights involved. So again, I would point to... First, I would go back to 1916 and the Pacific Livestock case, which addressed the Oregon statutory scheme for the adjudication of water rights and recognized it as comprehensive. This was way pre-McCarran Amendment. And not only the congressional intent from the language of the statute, but if you look at the Senate report, and again, I would point to Oregon footnote 8. I didn't read the kicker. It said, however, there was no indication that Congress believed there to be a problem with the way Western states were then conducting mass water rights adjudications. To the contrary, the discussions proceeded upon the assumption that the problem was the But are you saying that the United States was required to participate even though it had not waived its sovereign immunity? Not at all. Okay. What I'm saying is that the statutes operated exactly the same way pre-McCarran Amendment in terms of the fact that they would adjudicate and determine the rights of everybody over whom they had jurisdiction. Post-McCarran Amendment, that happened to include the United States. Pre-McCarran Amendment, it did not. And that's exactly the problem that Congress was trying to solve by passing the McCarran Amendment. And the court's holding in Oregon, I think, is really instructive. In that case, the court, and I quote, declined to adopt an interpretation of the McCarran Amendment that would render it inapplicable to the comprehensive adjudication schemes of so many Western states when it was passed. This court has contemplated whether the pre-McCarran Amendment statutory schemes, which are the same today, were comprehensive at the time of its passage and before. And the long line of unbroken cases also include, in addition to the U.S. v. Oregon case in this court, the Timowick case also addresses the comprehensive nature of the 1934 statute. Right, but the difficulty I'm having with your argument is that there's still a definition of comprehensive in the statute, and in the case, that seems to not be consistent with your argument. So, I suppose my response to that is, one, comprehensive doesn't appear in the statute, right? The United States— But I said to the cases. Right. The case has interpreted the statute, and it has interpreted the definition of comprehensive in a way that, to me, is inconsistent with your argument. So, I would, again, point to the fact that the only place that there is any suggestion that the United States has to be a party in these adjudications are in post-McCarran Amendment cases, when there's no question that the courts had jurisdiction over the United States. There's no case, not a single one, and the government doesn't cite it in their briefing, that says that the United States has to be a party to these pre-McCarran Amendment cases for them to be comprehensive. To the contrary, Tomoak and U.S. v. Oregon says that's not the case, and those are binding precedent in this circuit, and the court in Oregon declined and rejected the idea that these pre-McCarran Amendment cases were not comprehensive. Counsel, let's assume for a moment that we agree with you that this is a suit for the administration of water rights. In order for you to prevail on appeal, would we also have to determine that the lawsuit was an adjudication, a comprehensive adjudication? Yes, Your Honor. The prerequisite for the administration of rights under the McCarran Amendment, second prong, require an adjudication of those rights previously, and to be clear, we are seeking an administration of Baker Ranch's rights, not at all an adjudication of or determination of whatever the United States' rights might be. And so I think that that also goes to why the previous pre-McCarran Amendment statutory adjudications were comprehensive, because the retroactive effect of the McCarran Amendment as set forth in the holding of Tomoak do not expose the United States to some changed landscape or changed the liabilities or determine the United States' rights. All it does is give meaning to the decreed rights that predated the McCarran Amendment, which is exactly what Congress was trying to do. And if we were to hold that it was necessary for the United States to be a party, would we not be creating this huge gap in coverage of the statute for all of these pre-McCarran Act cases? Yes, Your Honor. That is, I think, the real world implication of a categorical holding that the United States has to be a party. When it had sovereign immunity before the McCarran Amendment, and it couldn't have been a party, that it would inject chaos not only for the holders of those rights, but for the state administrative agencies that do the work, for the courts that enter those decrees. I mean, the Nevada amicus brief, the Nevada state amicus brief said that there were 67 administrations that predate the McCarran Amendment, and they don't know what a holding like that would mean for them. And in this case, the 1934 Baker-Layman Decree took almost 10 years to do. These are expensive and very detailed, painstaking adjudications, and it would inject uncertainty there. More importantly, it would... at this point, is there, with the United States as a party? Is there a legal impediment to doing that? There is not a legal impediment for the United States to seek a supplemental adjudication to have its rights determined. Is there a legal impediment for Baker Ranches to seek a determination with the United States as a party? There's a very real impediment. Legal? Legally, yes. And that is that if you seek a petition for a supplemental adjudication, as the Baker Ranches has done after the entry of Judge Navarro's opinion, this was over a year and a half ago, and I believe this was in one of our requests for judicial notice, and the state engineer has not acted on it. It's discretionary. It's similar to the other issues that we raised with respect to the lack of a remedy, and use a special use permit as an example. That is also a discretionary function. Sure, if there is a decision on an application for a special use permit, you can appeal it up through the APA processes, right? But if there is no decision on that, notwithstanding the difficulties and different standards that apply for the appeal of an APA decision, you can't do anything. You can't really compel the superintendent of the parks to act on that. And so the remedy is this, the administration of the rights that were decreed, that they went through the trouble of, and that's the Nevada State Court went through the trouble of, decreeing and determining. Counselor, before you leave, I wanted to ask you to point me to the language in United States did not have to be a party for the adjudication to be comprehensive. Point me to the precise language in that case that supports that proposition, the page. I would say page 767. 767, what's the language? And the language says that the court... Could you quote the precise language to me, please? Yes, the court held on 767 that the court declines to adopt an interpretation of the McCarran Amendment that would render it inapplicable to the comprehensive adjudication schemes of so many Western states when it was passed. But that doesn't say anything about whether or not it's a comprehensive adjudication if all parties are not included. Because several pages later it says that all parties must be included in the adjudicatory process. Right, but it did by implication explain that pre-McCarran Amendment that those statutes were exactly the type of comprehensive adjudications that the McCarran Amendment was contemplating. This is coming, of course, off the history and the long-term and chaotic piecemeal litigation that was arising in the West. And that's why the states enacted these comprehensive statutory schemes to solve that problem. I understand that, counsel. You don't have to explain it to me. Okay. All right, thank you. All right, I'll reserve the rest of my time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. My name is Ezekiel Peterson here on behalf of the National Park Service. Plaintiffs here are seeking to administer rights against the United States that were never adjudicated against the United States, and thus they don't hold against the United States. I think the result of this Court adopting their interpretation would be to essentially forfeit any federal claims and objections that the United States could have presented had it been able to participate in the 1934 Baker Adjudication. So what prevented the United States from participating in that? The fact that Congress had not yet waived sovereign immunity, Your Honor. But the government could have participated. If Congress had waived sovereign immunity, the government could have participated, but we would push back on the assertion that an officer of the United States could have elected to waive sovereign immunity. So it's your view pre-McCarran Act there was no possible way for the United States to participate in one of these? I think that's consistent with what the Supreme Court has said about sovereign immunity in cases like the Minnesota case that we said in our briefs that says only Congress can waive sovereign immunity. It must be done unequivocally, and individual officers of the United States can't elect to subject the United States to proceedings where it has otherwise not waived its sovereign immunity. I think I'm going to start... Counsel, if I might ask you, will we not create chaos if we uphold sovereign immunity on these pre-McCarran Act decrees? And as Amicus, I think, pointed out, 67 decrees. What's your position on that? No, Your Honor, you would not create chaos. I think I'm going to start my answer to this question by saying that the practical effects of a holding that the United States hasn't waived sovereign immunity can't be dispositive here because sovereign immunity is jurisdictional. But even so, I would point to the State of Nevada's Amicus brief at page 13 where the state explains its process for conducting a supplemental adjudication that could determine in kind of a streamlined supplemental fashion the scope of the United States' water rights and resolve any claims and objections that the United States could present without reopening that Pandora's box of every previously decreed right and claim in the stream system. That's how we read Nevada's Amicus brief. The state is ready to engage in that kind of streamlined supplemental adjudication process. And I think that's the remedy that plaintiffs have. That's the avenue that plaintiffs have to try and get the remedy they're seeking here. Counsel, the argument about chaos ensuing, isn't that a policy argument as opposed to a legal argument? Precisely, Your Honor. And that's why I think I started by saying, you know, this is sovereign immunity. It's jurisdictional. That argument can't be dispositive. But as we point out in our briefs, there are McCarran-compliant ways to go about resolving these outstanding water rights without reopening that Pandora's box. The other one that we point to is the ability for plaintiffs to apply for a special use permit. We've always acknowledged that plaintiffs can apply for that and that any denial of that permit or a failure to act under APA 706-1 would be reviewable in court. But under your view of this case, something that was decided pre-McCarran Act, the government at any time could assert its rights. So it could be 2226, 200 years from now, right? And you could go back and say, well, that was 1951, and therefore our rights weren't adjudicated. We want to redo this whole thing. Your Honor, if the government's rights were never adjudicated in a McCarran-compliant proceeding, if the government was never properly joined to a water rights proceeding, I think that's correct. So when Congress passed the McCarran Act, why would it ever want that to be a possible result? I think the answer to that, I mean I can't necessarily speak to Congress's precise intent, but I think the answer to that is that that would only be the circumstance in a narrow window of spaces where the United States, like here, has some sort of reserved right in a stream basin, and then there's some sort of conflict over that right later. And there is this process, and I think the state of Oregon case and the Eagle County case are supportive of this. Congress knew about these supplemental adjudication processes that could in a kind of limited, more cabined way. But if we're trying to understand what Congress intended in 1952 when it passed the McCarran Act, part of our analysis is to assess whether the results coming out of that will be rational or not. And I'm trying to understand why it would be rational to have these things sit for 200 years and then be adjudicated. Why would Congress want that? Or when they passed the McCarran Act, it seems like they made it retroactive to take care of everything. Your Honor, I think the answer to this is because there's no evidence, there's no unequivocal evidence in the McCarran Act that it was meant to forfeit substantive claims and objections. I think when considering sovereign immunity, it's black letter law from the Supreme Court that there has to be unequivocal text in the statute to waive sovereign immunity. No, that's fair, but we have this, I don't know how to pronounce it, TAMOC, I don't know how to pronounce that case. Yes. But that case has some language that's really bad for your side. I understand the argument you're making, well, those were rights that they acquired from someone else. Yes. But if we read that case at face value, doesn't that then get us over the hurdle of the problem of retroactivity because the court said it's retroactive? Your Honor, you're correct that when you read the text of that case, it seems to be very broad. I do think, I'm going to go back to what we said in our brief regarding that case. That case has to be read in context, and it's referring exclusively to rights that were adjudicated in a pre-McCarran Amendment proceeding that then the United States later acquired. I think that totally makes sense. That comports with basic fairness principles that then the United States would be subject to suits to administer those rights because the United States, when it's acquiring the rights, is stepping into the shoes of the private parties and knows that those rights were subject to the adjudication. And do you know of any cases since that case that have made that distinction? No, I don't know of any cases since that case that have made that distinction either one way or the other. I mean to be fair, there aren't a lot of cases on this, which is why I think this case is so difficult. I agree with you. I'm sorry. Being a lawyer on this case would not be easy. Okay, please continue. I just thank you for the answers. Of course, Your Honor. And I would point the Court to one case that we think considers a similar issue, and that's the 1956 Ninth Circuit case, United States v. Oxnum Irrigation District that we cite in our brief. And that case was decided very short, three years after the passage of the McCarran Amendment, and said, quote, it is too clear to require exposition, end quote, that a pre-McCarran state water rights decree could have no effect on federal rights. And I think this also comports with Nevada state law at the time of the Baker-Lehman adjudication and now Section 7924 from 1934 that we cite. Now that case you just cited, though, that did not deal with the comprehensive requirement, correct? That's correct. Yeah, I think it does, though. But it's consistent with the comprehensive definition that was in the state of Oregon. Yes, Your Honor, and it dovetails with what I would say is an intuitive holding that rights that were never adjudicated against the United States cannot be administered against the United States later because the United States was never a party to those proceedings. And I will address the state of Oregon case briefly. Judge Rawlinson, I think you're correct in reading that case in that it says that the hallmark of comprehensive water rights adjudication is that all water rights claims in a river system will have been determined by the time the adjudication is over, and that's certainly not the case here where the United States hadn't waived sovereign immunity in 1934. I think I'm going to talk a little bit more about the point that Congress didn't intend to forfeit any claims or objections that the United States made, unless the Court has any questions that it would like me to address right now. No? Okay. I think to reach plaintiff's preferred outcome here, the Court would have to infer that Congress intended, without saying so explicitly, to forfeit any federal objections and claims that the United States could have raised in the 1934 adjudication, but never had the chance to do so. So if the United States could have participated in that adjudication, then it certainly could have objected to certain remedies that plaintiffs now say they're entitled to under the decree, such as this purported self-help remedy to go on to national park lands and conduct their own land management activities. But it stretches the text of the McCarran Amendment too far, and it falls far afoul of the instruction to construe waivers of sovereign immunity narrowly in order to adopt that particular interpretation of the McCarran Amendment. So we don't think that that comports with the basic law of sovereign immunity, or is at all evident from the text of the McCarran Amendment. Could you address, counsel, the arguments being made about the supplemental adjudication process, that there are all sorts of problems with that and challenges? Because I follow the logic of what you're saying, that the U.S., had it been able to participate in the 1934 decree, might have opposed a number of provisions that are in it. But what do we do on the other side, which is address a result where we might say, yes, the supplemental adjudication process is available? We've got this pushback in the briefing about that. Yes, Your Honor, and I think I would go back to the State of Nevada's amicus brief at page 13, where they describe the process, and the state engineer is responsible for carrying out that process, and the state does not describe it to be a particularly burdensome or onerous process. Certainly they say that if this court upholds the judgment of the district court, it should be clear that it's not reopening all the previously decreed water rights pre-McCarran, and we agree with that. But I think the way the state describes the supplemental adjudication process, it describes it in a streamlined kind of way, that it only applies to the United States' claims and objections with respect to other parties. So certainly, yes, that would involve some work, but that's the kind of proceeding that the McCarran Amendment contemplated when it was passed. That's the kind of McCarran-compliant proceeding that the United States has waived sovereign immunity for at this point. And that's the kind of proceeding the Supreme Court was considering when it decided the Eagle County case. That was similarly a Colorado supplemental adjudication process, where in that case the United States said, well, this isn't actually comprehensive, and the Supreme Court said, yes, it is. That is a comprehensive adjudication when you're supplementing things, because all rights will be decided by the end of it. Counsel, have the parties explored – I'm sorry, Judge Fitzwater. No, go ahead, Judge Rawlinson. Have the parties explored mediation in this case? Yes, there's been quite a bit of settlement talks in this case. I know you asked my predecessor on this case the same question in the prior argument. We haven't been able to reach an agreement. Have not. We have not. But we have explored mediation and settlement discussions in this case. Yes. I was going to ask you, Counsel, are you aware – and this may not be a fair question – of any western state that does not have an analog to the supplemental adjudication process where our ruling in your favor would create a hiatus or a gap that couldn't be filled? I realize that Colorado and Nevada are similar. Your Honor, I am not aware of such a state. I have not come across such a state in my research, which is limited. I don't know the full scope of all the western state water rights systems. That's fair enough. Thank you. I think just the last point I'll make is that the three cases that my friend on the other side cited, the Eagle County case, the USV District Water Division 5 case, and the USV State of Oregon case, all involved situations where the United States was present in an adjudication and was then saying, for one reason or another, that that adjudication wasn't comprehensive. And that's just far afield from what we have here, where the United States could not have been joined to the 1934 Baker-Lehman adjudication and thus never had the chance to present its substantive claims or objections. So plaintiffs now asking this Court to administer rights against the United States that were never adjudicated against the United States does not fall within the narrow waiver of sovereign immunity of Section A2 of the McCarran Amendment. I'm happy to answer any more questions the Court might have. Otherwise, we would ask this Court to affirm, and I'm happy to turn back my time. All right. Thank you, Counsel. Thank you, Your Honors. Rebuttal. Thank you, Your Honors. First, I just want to start and point out that affirming the District Court would be a sea change to water law in the Western United States. It would eliminate the finality and certainty for practically every water user downstream of a reserved right. Nevada, 85.6% of the land is federally owned. We are talking sweeping impacts to people who rely upon those rights every day and have for, in some cases, 150 years. The notion that I want to address my friend on the other side's contention that the United States is forfeiting some claims or some defenses. The first thing I would do is point to the Eagle County case where the United States Supreme Court said that the absence of owners' previously decreed rights may be present, problems going to the merits, and in a case there develops a conclusion between them. But the court didn't say that was a reason for something to not be comprehensive or for the United States not to be subject to the supplemental adjudication in that case. Counsel, would you agree that if the United States had been a party, it may have objected to some of the rights that were asserted? You know, it may have. I can't say. I think that you have to take the bitter with the sweet. If the United States enjoys sovereign immunity, it can't also not have sovereign immunity and be able to object to other people's rights. But it wouldn't be other people's rights. It would be the United States' rights. But the difficulty is it was not a party, and so those rights were put into place without the United States having a say. And the United States was not required to be because there was a waiver of sovereign immunity. There was not a waiver of sovereign immunity. Right. And that, I think, my response to that is that these previous adjudications don't have anything to do with the United States' rights. Today? You say they don't have anything to do with the rights? Today or then. Or ever? They don't because the United States reserves rights when it pulls public land from the public domain. And the case law is clear that when that happens, those reserved rights vest, and they're limited to the purpose for which they were reserved. And so it's indisputable in this case that the United States reserved rights in 1909 and 1922 for the Baker-Layman Creeks, that is indisputably junior to the Baker Ranch's rights, the latest of which is in 1904. And so there's no concern, quite frankly, what their rights are or what they do with their land. Because the McCarran Amendment provides a vehicle for people whose rights were adjudicated conclusively in pre-McCarran Amendment to administer those rights. That's the second prong of the McCarran Amendment. And without that, I mean, it's the plain text of the statute, and it's the exact problem that the United States Congress was trying to solve in this time. Because if you have these rights, what are they worth if the major stakeholder can turn its reserved and indisputably, in this case, junior rights, into super senior rights that trump all others? That's exactly what's happening here. And the United States can seek to have those rights adjudicated in a supplemental adjudication, and if for some reason they establish that they were senior to ours or others, they would be slotted in, in terms of priority, wherever they fit. That's how the water law works. It has nothing to do— Counsel, please don't tell me how water law works. That's very condescending. I'm sorry, Judge Rollinson. I didn't mean it that way. I meant that's how the Nevada statutory scheme works. If there's a supplemental adjudication and a party proves that its unadjudicated right is senior to others, it will be slotted in, in terms of priority. That was my only point. I'm sorry that it came off that way. The other—two other points I would like to make in my closing minutes is that I'd like to point to another part of the Oregon case on page 765 that says, while these statutory adjudications seem to promise an end to the confusing and conflicting adjudication of water rights in the multiple cases, the system was impaired by the refusal of the federal government to participate. Since the United States had large land holdings and extensive reserved rights in the West, its claims of sovereign immunity significantly diminished the value of the comprehensive state adjudications. That's past tense. And finally, in Timowick, in footnote 1, this court said that, in terms of explaining why it found this statute to be retroactive, that a contrary reading of the amendment would be completely at odds with the evils the law is designed to combat. And the committee's report explicitly sets forth the goals of Congress that it had in mind, so it's worth quoting at some length. And it quotes the Senate report in terms of defining the intent of Congress, which controls here. The U.S. cannot point to—and my friend on the other side admitted that— couldn't point to anything that supports a congressional intent that aligns with the United States position and view of the McCarran Amendment in this case. There is no congressional intent expressed in either direction, to be fair. Well, Your Honor, respectfully, this court said, in Timowick, that it set forth the goals that Congress had in mind in the Senate report. And I think that is a fair way to define congressional intent. All right, thank you, counsel. You've exceeded your time. Thank you, Your Honor. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, OWENS, Fitzwater